IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Dennis Stiers,                          :

            Plaintiff,                   :

      v.                                 :    Case No. 2:16-cv-449

                                         :    JUDGE ALGENON L. MARBLEY
Commissioner, Social Security                 Magistrate Judge Kemp
Administration,                          :

            Defendant.                   :

REPORT AND RECOMMENDATION

I.    Introduction

     Plaintiff, Dennis Stiers, filed this action seeking review
of a decision of the Commissioner of Social Security denying his
applications for disability insurance benefits and supplemental
security income.  Those applications were filed on September 21,
2012, and alleged that Plaintiff became disabled on March 31,
2011.

     After initial administrative denials of his claim,
Plaintiff was given a hearing before an Administrative Law Judge
on February 2, 2015, and a supplemental hearing on July 16, 2015.
In a decision dated August 6, 2015, the ALJ denied benefits.
That became the Commissioner's final decision on March 24, 2016,
when the Appeals Council denied review.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on July 25, 2016.  Plaintiff filed a
statement of specific errors on October 20, 2016.  The
Commissioner responded on January 31, 2017.  Plaintiff has not
filed a reply brief, and the case is now ready to decide.

II.   Plaintiff's Testimony at the Administrative Hearing

     Plaintiff, who was 48 years old as of the date of the first
administrative hearing and who has a high school education,

testified as follows.  His testimony appears at pages 161-72 and 176-201 of the administrative record.

At the first hearing, Plaintiff testified about his self-employment.  He said that he helped his father around the farm, mostly taking care of cows.  Until 2008, he was also a self-employed mechanic.  He discontinued that business in 2008 when he had a stroke and then moved to Ohio to help his father.  He also did some mechanic work occasionally but not for pay.  The hearing was adjourned after some confusion about how much Plaintiff had earned after his alleged onset date.

At the second hearing, Plaintiff clarified he closed his auto mechanic business in either 2009 or 2010 because he could no longer do the required work due to problems with his feet and his eye.  His wages after that date represented money his parents paid him for helping out on the farm.  He also checked in on the employees in his father's automotive shop once or twice a week.

When questioned by his attorney, Plaintiff said that his most disabling condition was his difficulty with reading and spelling, followed by problems with his legs and eyes.  If he stood for a while, his legs swelled and became ulcerated.  He had blurred vision in his right eye due to a detached retina and had diabetic neuropathy in his left eye.  His diabetes also caused numbness in his fingertips.  He had had a toe amputated on his right foot in either 2010 or 2011.

Plaintiff said that he could stand thirty to forty minutes before having to sit.  He could sit at least an hour.  Some of his medications made him drowsy, but he had difficulty sleeping at night, and he took naps on a daily basis.  He was able to drive but did not drive at night.

Plaintiff's mother, Sandra Stiers, also testified at that hearing.  She said that to her knowledge Plaintiff had not done any auto mechanic work since 2011.  On the farm, he would put hay

into a cattle feeder with a tractor in the wintertime when her husband was not able to do so.  She and her husband gave Plaintiff money for his living expenses. (Tr. 205-210).

### III.   The Medical Records

The pertinent medical records are found beginning at page 453 of the record.  They can be summarized as follows.  Because Plaintiff raises an issue only as to the ALJ's evaluation of opinions from Dr. Harvey, the treating physician, the Court will focus its summary primarily upon Dr. Harvey's records.

The first set of records show that Plaintiff was seen by Dr. Harvey in 2009 and 2010 for treatment of diabetes.  His disease was poorly controlled but the notes show that he took his medications inconsistently and also did not watch his diet closely.  By 2012, he was experiencing foot ulcers and cellulitis resulting from diabetic neuropathy as well as some visual problems.  He was still not taking his medication as directed and was not watching his diet, although there were times when he did better.  A note dated October 10, 2012 reported that he was doing "quite well."  (Tr. 504).  He had had surgery to remove a skin lesion on his right leg in May, 2012, and that was healing nicely as of October of that year.

On October 16, 2014, Dr. Harvey completed a functional capacity assessment form.  On it, he stated that Plaintiff could lift 20 pounds occasionally and less than ten pounds frequently, and could not stand, walk, and sit for a total of eight hours in a workday.  He explained his conclusions by referring to Plaintiff's severe diabetic neuropathy affecting his lower extremities with chronic edema.  Plaintiff's neuropathy also limited his sensation.  Dr. Harvey thought that Plaintiff should avoid exposure to extremes of temperature and also to workplace hazards.  (Tr. 882-89).

Treatment notes from 2014 showed that Plaintiff's symptoms

included increased swelling and shortness of breath and that he
was also treated for some burns on his shin.  Some of his
swelling was attributed to running out of Lasix.  (Tr. 906).  A
note from 2013 indicated that Plaintiff was having a hard time
standing on hard surfaces and that "Patient apparently is being
required to work 40 hours a week for his outlet assistance and
does not feel he is able to perform at this level due to diabetic
issues."  (Tr. 918).  A prior note said that he was "back to work
regularly...."  (Tr. 926).

On February 2, 2015, Dr. Harvey completed a second
functional capacity report.  This time, he concluded that
Plaintiff could lift fifty pounds occasionally and 25 pounds
frequently but could still not sit, stand, and walk for a total
of eight hours.  He did not limit Plaintiff's exposure to
hazards, and he did not explain any of his findings.  (Tr. 982-
89).  Notes from 2015 showed that he continued to have ulceration
and other problems with his legs and feet.  He also burned
himself while welding, and a note following his hospitalization
for that problem said that he was, as of April 17, 2015, "back to
work" and that he "wears tennis shoes to work as a welder."  (Tr.
1235).

Two state agency physicians reviewed the records as well.
Both Dr. Green and Dr. Torello concluded that he could do a full
range of light work.  (Tr. 232, 243-44).  The later of these two
opinions is dated April 29, 2013.

IV.  <u>The Vocational Testimony</u>

Lynelle Hall was called to testify as a vocational expert at
the administrative hearing.  Her testimony begins at page 210 of
the administrative record.

Ms. Hall first testified about Plaintiff's past work.  She
said that he worked as an automobile mechanic.  That was a
skilled job which Plaintiff performed at the heavy exertional

level.

Ms. Hall was next asked questions about a hypothetical person with Plaintiff's age, education, and experience who could work at the light exertional level. She testified that such a person could not do Plaintiff's past work. However, that person could be employed as a router, garment sorter, or housekeeper.

Plaintiff's counsel then posed some questions to Ms. Hall about a person who had various limitations, one of which was not being able to sit, stand, and walk for a cumulative total of eight hours in a workday. She said that those limitations were inconsistent with the ability to perform light work. She also testified that in order to do a full range of light work, someone had to be able to stand and walk frequently during the workday, or between one-third and two-thirds of the day.

V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 143-52 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. Second, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe physical impairments including diabetic neuropathy, right foot ulcers, partial amputation of the right third toe, bilateral shoulder pain, and obesity. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could perform a full range

of light work.  That being so, the ALJ concluded that Plaintiff
could not perform his past relevant work.  However, relying on
the vocational testimony, the ALJ found that Plaintiff could do
certain light unskilled jobs including router, garment sorter,
and cleaner/housekeeper, and that such jobs existed in
significant numbers in the national economy.  That finding is
inconsistent with a determination of disability.  Consequently,
the ALJ decided that Plaintiff was not entitled to benefits.

### VI.  Plaintiff's Statement of Specific Errors

In his statement of errors, Plaintiff raises these issues:
(1) the ALJ's determination that Plaintiff could do light work is
not supported by substantial evidence; (2) the ALJ failed to
afford controlling weight to the opinions of the treating
physicians; and (3) the ALJ based his decision on responses to a
hypothetical question that did not accurately reflect Plaintiff's
limitations.  These issues are evaluated under the following
legal standard.

Standard of Review.  Under the provisions of 42 U.S.C.
Section 405(g), "[t]he findings of the Secretary [now the
Commissioner] as to any fact, if supported by substantial
evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th
Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.
1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into

account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

Although Plaintiff's statement of errors identifies three separate issues, his arguments come down to this: The ALJ did not have an adequate basis for rejecting Dr. Harvey's opinion, and that opinion was inconsistent with the ability to work for an eight-hour day. This argument requires the Court to explain and apply the "treating physician" rule.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); <u>see also Lashley</u> <u>v. Secretary of H.H.S.</u>, 708 F.2d 1048, 1054 (6th Cir. 1983); <u>Estes v. Harris</u>, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. <u>Moon v. Sullivan</u>, 923 F.2d 1175 (6th Cir. 1990); <u>Loy v. Secretary of HHS</u>, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. <u>Cutlip v. Secretary of HHS</u>, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally

resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ first discussed Dr. Harvey's medical notes in connection with his credibility determination. He described the notes as showing that in 2012, Plaintiff's symptoms were attributed to medical non-compliance. In 2013 and 2014, his examinations were normal. In January, 2015, he was feeling well and was not experiencing foot pain. His foot lesions had also improved and his cellulitis had resolved. (Tr. 149).

Turning to Dr. Harvey's two opinions, the ALJ gave them "some weight" because Dr. Harvey is a treating source. (Tr. 150). However, he found that because Dr. Harvey's notes showed that Plaintiff's diabetes was being controlled with medication and his "walking, postural, and environmental limitations are also inconsistent with the claimant's normal gait, normal musculoskeletal motions, and ongoing work activity," id., he did not give it controlling weight. He then gave great weight to the opinions of the State agency reviewers because they were consistent with "the claimant's controlled diabetes and ongoing work activity" and because "the claimant has not used assistive walking devices on any consistent basis." Id.

Although the Commissioner defends the ALJ's evaluation of Dr. Harvey's opinions as supported by the evidence, the Court notes two primary concerns. The first relates to the ALJ's stated reasons for discounting the opinions. Despite the variety of factors set forth in 20 C.F.R. §404.1527(c) and the general requirement that an ALJ evaluate the supportability and consistency of a treating source's opinions before turning to

-8-

other regulatory factors, see Gayheart v. Comm'r of Social Security, 710 F.3d 365 (6th Cir. 2013), the ALJ made no specific mention of these factors when assigning only some weight to Dr. Harvey's opinions.  It can be inferred that the ALJ did not think that Dr. Harvey's notes provided sufficient support for his opinions, but the ALJ did not discuss any diagnostic techniques nor did he refer to any other evidence besides Dr. Harvey's notes which presented an inconsistency of the type which could call Dr. Harvey's opinions into question.  Assuming that the ALJ did the correct Gayheart analysis, albeit in very brief form, he also did not comment on the length of the treating relationship, the type of treatment provided, whether the frequency of treatment was consistent with the type of symptoms reported by Dr. Harvey, or any other factors which an ALJ is required to consider.  Although an ALJ need not recite and discuss each factor separately, the need to provide a sufficient explanation for the rejection of a treating physician's opinion in order to satisfy the articulation requirement found in 20 C.F.R. §404.1527(c) suggests that the ALJ's brief three-sentence rejection of Dr. Harvey's opinion is, if not reversible error by itself, at the very least problematic.

That leads into the Court's second concern.  It appears, especially from Dr. Harvey's first functional capacity report, that he based much of his opinion on Plaintiff's diabetic neuropathy and the associated swelling and persistent ulceration and infection of his feet and legs.  While those symptoms might not explain Dr. Harvey's view that Plaintiff could not sit for up to six hours in a workday, they are very relevant to the issue of how long he could stand and walk.  In this case, the ALJ did not make any findings or take any testimony about Plaintiff's ability to do sedentary work, so the crucial finding he made is that Plaintiff could do the standing and walking requirements of light work.

The ALJ's dismissal of Dr. Harvey's opinion did not focus

on, or even mention, that issue. Despite acknowledging that some restrictions could reasonably be seen as accompanying Plaintiff's "diabetes, obese BMI, and partially amputated right toe," the ALJ apparently concluded that those impairments still permitted Plaintiff to stand and walk for up to six hours a day, five days a week, in a work setting. The only reasons provided for that finding were that Plaintiff's diabetes was controlled with medication – a finding that is not inconsistent with a severe degree of diabetic neuropathy or lower extremity edema – and that his normal gait and musculoskeletal motions belied his inability to stand and walk for such an amount of time. But there is no reason to assume that someone who has swollen legs and is prone to cellulitis and foot ulcers, as the record clearly demonstrates Plaintiff to be, must walk with a limp or have muscular insufficiency. Consequently, the reasons cited at Tr. 150 are simply not the type of "good reasons" (i.e. supported by the record) which §404.1527(c) requires an ALJ to provide.

The ALJ also cited the fact that Plaintiff engaged in "ongoing work activity." Id. However, he never made a finding as to what that activity consisted of, nor is there anything in the record suggesting that it was done at the light exertional level or required a degree of standing or walking which was inconsistent with Dr. Harvey's opinion. The State agency reviewers' opinions, which predated the ALJ's decision by well over two years and which did not take into account any medical records from the second half of 2013, all of 2014, and the first half of 2015 (and which also were rendered without the benefit of either of Dr. Harvey's opinions) cannot constitute substantial evidence on this point. Consequently, the Court concludes that as to one part of Dr. Harvey's opinion – the important part for this decision, which, again, is based upon the Plaintiff's ability to do light work - substantial evidence does not support the ALJ's decision. On remand, the ALJ must assign the

appropriate weight to Dr. Harvey's view that Plaintiff cannot stand or walk for more than two hours in a workday taking into account the entirety of the record and the applicable regulations and interpretive case law.  If the ALJ determines that Plaintiff cannot do a full range of light work, there may then be a need for additional vocational evidence should the ALJ find valid reasons for discounting Dr. Harvey's opinion that Plaintiff cannot sit for up to six hours in a workday.

## VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), sentence four.

## VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d

947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge